# CIRCUIT COURT OF FAIRFAX COUNTY

Burton & Robinson, Inc., et al.

v.

Harmon at Oakton, L.C., et al.

January 5, 2001

Case No. (Chancery) 158264

BY JUDGE JANE MARUM ROUSH

This matter came on to be heard on September 28, 2000, on the defendants' demurrers and pleas in bar. At that time, the Court took the matter under advisement. For the reasons stated below, the demurrers and pleas in bar will be overruled.

## Facts

The facts of this case will be briefly stated. The plaintiff Burton & Robinson, Inc., commenced this suit to enforce mechanic's liens on December 4, 1998. In its Bill of Complaint, Burton & Robinson alleges that it had performed construction work on some[1] (but not all) of the lots in the Oakton Retreat subdivision in Fairfax County for which it has not been fully paid.

---

[1] The lots that are the subject of Burton & Robinson's bill of complaint are Lots 8A, 9A, 10, 11A, and 15A. Bill of Complaint, ¶ 4.

Burton & Robinson alleges that it entered into a single contract to perform work on the subdivision, including "furnishing and installation of an asphalt drive, steps, pipe, stone and associated equipment, labor, and material." Bill of Complaint, ¶ 7. The defendant Harmon at Oakton, L.C. ("Harmon" or "Owner") owned and developed Oakton Retreat. The bill of complaint identifies "Randolph Williams, Inc.," as the "owner's agent and/or construction manager." Bill of Complaint, ¶ 3. Burton & Robinson filed memoranda of mechanic's liens with respect to each of the applicable lots on June 25, 1998. The amounts claimed to be owing on the applicable lot are as follows: Lot 8A, $4,252.50; Lot 9A, $1,987.50; Lot 10, $4,748.10; Lot 11A, $1,987.50; Lot 15A, $4,962,50. Bill of Complaint, ¶¶ 9-13.

On April 2, 1999, Prince William Construction Company ("PWCC") was granted leave to intervene in this action as a party complainant. In its petition and cross-bill, PWCC alleges that it furnished and installed site development improvements on all of the lots in the Oakton Retreat subdivision for which it has not been fully paid. PWCC claims it is owed a total of $10,542.58. PWCC filed a mechanic's lien disclosure statement on March 17, 1997. PWCC filed memoranda of mechanic's liens against each of the lots in Oakton Retreat on December 9, 1998. PWCC's apportioned its claim among the lots, claiming a lien of $702.84 on each lot. In addition to the lots named in note 1, above, PWCC filed memoranda of mechanic's liens against the following lots: 1, 2, 4, 5, 6, 7, 13A, 14A, 16A, and 17A. PWCC seeks to enforce its lien on each of the lots in Oakton Retreat.

Several of the defendant lot owners (and trustees under deeds of trust to the affected lots) filed demurrers and pleas in bar to Burton & Robinson's bill of complaint[2] and to PWCC's petition and cross-bill. Demurrers and pleas in bar were filed by the owners of the following lots to PWCC's petition and cross-bill: Lots 4, 5, 6, 8A, 10, and 15A. Those demurrers and pleas in bar were consolidated for the hearing that was held on September 28, 2000.

*Demurrers*

A. *Demurrers to Burton & Robinson's Bill of Complaint*

The owners of Lots 8A, 10, and 15A claim that Burton & Robinson's mechanic's liens are defective because the liens do not comport with the contract pursuant to which Burton & Robinson performed work at Oakton

---

[2] Demurrers and/or pleas in bar were filed by the owners of the following lots to the bill of complaint: Lots 8A, 10A, and 15A.

Retreat. In its lien memoranda, Burton & Robinson identifies the general contractor with whom it dealt as "Harmon at Oakton, L.C., c/o Randolph Williams, Inc." The affidavit portion of the lien asserts that both "Harmon at Oakton, L.L.C., and Randolph Williams" are indebted to Burton & Robinson. The Subcontractor Agreement and invoices that Burton & Robinson produced in response to the defendants' motion craving oyer, however, show that Burton & Robinson contracted with "Randolph Williams, Inc." These lot owners claim that the liens are fatally defective in that the memoranda of mechanic's lien do not comport with the underlying contract and thus do not accurately state the "amount and consideration of [the] claim and the time or times when the same is or will be due and payable" as required by Code § 43-4.

In response, Burton & Robinson denies that the contract and invoices produced informally in response to the motion craving oyer reflect the entirety of the agreement between Burton & Robinson and Harmon at Oakton. Burton & Robinson contends alternatively that Harmon at Oakton may be held liable for the contracts made by its agent, Randolph Williams, Inc.

The Court concludes that there is a factual dispute about the party with whom Burton & Robinson contracted that cannot be resolved by demurrer. Taking the factual allegations of the bill of complaint as true, as the Court must do for the purposes of demurrer, the bill of complaint is adequately pleaded and the memoranda of mechanic's lien attached thereto are not defective on their face. The contract produced in response to the motion craving oyer supports Burton & Robinson's argument that the contract between it and Randolph Williams, Inc., is not the entirety of its agreement to provide labor and material to the Oakton Retreat project. For example, by its terms, the contract relates to "concrete" services. It is undisputed that Burton & Robinson provided asphalt, paving, and stone services to the project. Therefore, this factual dispute must be resolved at trial and the demurrer will be overruled on this point.

B. *Demurrers to PWCC's Cross-Bill*

1. *Compliance with Virginia Code § 43-3(B)*

As noted above, PWCC alleges that it performed site work for the entire Oakton Retreat subdivision. It filed a disclosure statement pursuant to Code § 43-3(B). PWCC allocated its lien among the various lots in the subdivision, as it is required to do by statute.

The owners of Lots 4, 5, 6, 8A, 10, and 15A demur to PWCC's cross-bill on the grounds that PWCC failed to comply with the requirements for a disclosure statement set forth in Va. Code § 43-3(B).

In paragraph 4 of its cross-bill, PWCC alleges that it filed a disclosure statement under Code § 43-3(B) on March 18, 1997. In Count II of the cross-bill, PWCC alleges that it performed work on the project pursuant to contracts it entered into with the owner dated July 1, 1998, and with the construction lender dated July 15, 1998, respectively. Accordingly, these lot owners contend, the disclosure statement filed in 1997 cannot relate to the work performed under the 1998 contracts. The demurrants argue, therefore, that PWCC's liens are invalid because it did not file a disclosure statement for work done pursuant to the 1998 contracts on which PWCC's liens are based.

In response, PWCC contends that it entered into a single contract with Harmon at Oakton on June 4, 1996, to perform site work improvements at the Oakton Retreat project. When Harmon at Oakton began having financial difficulties, the construction lender, Ohio Savings Bank, contracted with PWCC on July 15, 1998, for PWCC to continue to perform under its earlier contract with the owner. PWCC claims that the reference in paragraph 12 of its cross-bill to a contract dated July 1, 1998, between PWCC and Harmon at Oakton is "a typographical error and should be treated as surplusage. The contract in question is dated June 4, 1996."

The Court concludes that the typographical error in the petition and cross-bill as to the date of the contract between PWCC and Harmon at Oakton does not render the disclosure statement filed on March 18, 1997, deficient pursuant to Code § 43-3(B). The disclosure statement makes no mention of the date of the contract between PWCC and Harmon at Oakton. On its face, the disclosure statement meets the requirements of Code § 43-3(B). The demurrer will be overruled on this point.

## 2. *Compliance with Virginia Code § 43-7*

The owners of Lots 4, 5, 6, 8A, 10, and 15A contend that they acquired their respective lots before the work was performed by PWCC on the project. According to the allegations of PWCC's petition and cross-bill, Lot 4 was conveyed to the Alims sometime prior to August 4, 1998, Lot 5 was conveyed to the Hoggs before July 2, 1998, Lot 6 was conveyed to the Merickas before July 2, 1998, Lot 8A was conveyed to the Ryans on March 20, 1998, Lot 10 was conveyed to the McKitricks on April 16, 1998, Lot 15A was conveyed to the Sayces on February 23, 1998.

They claim that no valid disclosure statement pursuant to Code § 43-3(B) was recorded before they acquired their lots. They claim further that PWCC's lien is therefore invalid as to those lots. In addition, because there was no contractual relationship between PWCC and the lot owners, PWCC must be considered a subcontractor. The lot owners contend that there is no allegation that PWCC, a subcontractor, notified the owners of the filing of the mechanic's lien prior to filing the suit to enforce as required by Code § 43-7.

In that the Court has found that PWCC's disclosure statement dated March 18, 1997, was valid and covered the services claimed by PWCC in its memoranda of mechanic's lien, the demurrers will be overruled on this point.

*Pleas in Bar*

A. *Pleas in Bar to Burton & Robinson's Bill of Complaint*

1. *Timeliness of Filing Mechanic's Liens on Lots 8A and 15A*

The owners of Lots 8A and 15A filed a plea in bar to Burton & Robinson's bill of complaint, alleging that the mechanic's liens are invalid because they were filed more than ninety days after Burton & Robinson completed work on their respective lots. Therefore, these lot owners contend, the liens are invalid under Code § 43-4.

Pursuant to a motion craving oyer, Burton & Robinson filed a copy of its contract with Randolph Williams, Inc. Article 8 of that contract provides that Burton & Robinson may not bill for its work on a lot until the work has been completed and approved for payment by a project superintendent of Randolph Williams, Inc. Burton & Robinson also produced invoices in response to the motion craving oyer showing that the latest date that it billed Randolph Williams for its work on Lot 8A was February 26, 1998, and the latest billing date for Lot 15A was January 30, 1998. Therefore, argue these lot owners, Burton & Robinson could timely file memoranda of mechanic's liens up to ninety days after the last day of the month in which it performed work. Burton & Robinson's liens were not filed until June 25, 1998, past the ninety-day period for Lots 8 and 15A.

Burton & Robinson responds that it installed a pipestem driveway that covers portions of Lots 8, 15A, and 10 pursuant to a single contract. Burton & Robinson last performed work on Lot 10 on March 18, 1998, as evidenced by an invoice attached to the lot owners' consolidated memorandum in support of their demurrers and pleas in bar as Ex. 8. Burton & Robinson argues that its liens were therefore timely as they were filed within ninety days

of the end of March 1998 when it last worked on the project pursuant to its contract.

The Court agrees with Burton & Robinson. A lien claimant who has a single contract to perform services or supply materials to more than one lot must file a memorandum of mechanic's lien "not later than ninety days from the last day of the month in which he last performs labor or furnishes material" to the project *under the claimant's contract* pursuant to Code § 43-4. The Court concludes that Burton & Robinson's liens were timely filed and thus overrules the pleas in bar on this point. See, e.g., *Floors, Inc., of Maryland v. Robert Luckett & Associates*, 31 Va. Cir. 278 (Fairfax 1993).

### 2. Failure to Join a Necessary Party as to Lot 15A

In its memorandum in support of its plea in bar, the owners of Lot 15A raised the issue that Burton & Robinson had not served the holder of the lien of a second deed of trust on Lot 15A with process in this case within one year of filing. They argued that Lot 15A should be dismissed from the action because a necessary party was not served within one year of the commencement of the action. Other allegations of various failures to join necessary parties, while thoroughly briefed, were resolved by agreement of the parties prior to the hearing on September 28, 2000.

The Court will not consider this argument because it was not raised in either the demurrer or the plea in bar. A party cannot interject new issues in a case through supporting memoranda of law that were not raised in the operative pleadings, in this case, the plea in bar or demurrer.

### B. Pleas in Bar to PWCC's Cross-Bill

### 1. Timeliness of Suit to Enforce as to Lots 4, 5, and 6

The owners of Lots 4, 5, and 6 contend that PWCC's mechanic's liens filed as to those lots are invalid because PWCC did not bring a valid suit to enforce the liens within the time period provided by Code § 43-17. Lots 4, 5, and 6 were not part of Burton & Robinson's bill of complaint filed on December 4, 1998. PWCC filed its memoranda of mechanic's liens on December 9, 1998. In its petition and cross-bill, filed on June 8, 1999, PWCC seeks to enforce its mechanic's liens on those lots.

The owners of Lots 4, 5, and 6 claim that PWCC is precluded by Code § 43-22 from enforcing its lien to lots not part of the original bill of complaint. That Code section provides, in pertinent part:

When suit is brought for the enforcement of any such lien against the property bound thereby, all parties entitled to such liens upon the property or any portion thereof may file petitions in such suit asking for the enforcement of their respective liens to have the same effect as if an independent suit were brought by each claimant.

Virginia Code § 43-22. These lot owners claim "the property" referred to in that statute is only the "property" that is the subject of the initial action, not any additional property that the lienholder might have a lien on. Therefore, they argue, although a suit to enforce was commenced by PWCC within six months of the filing of PWCC's liens, the suit was not *validly* brought as to Lots 4, 5, and 6. Those lots should be dismissed from the cause.

PWCC responds that these lot owners are estopped from contesting the right of PWCC to bring suit to enforce its liens on all the lots in Oakton Retreat. This Court entered an order on April 2, 1999, that expressly granted PWCC leave to "file a Petition to enforce its Mechanic's Liens on all lots in Oakton Retreat subdivision, including lots which are the subject of the Complaint filed by Burton & Robinson, Inc., and to be thereafter aligned as a party Complainant in these proceedings." The owners of Lots 4, 5, and 6 made no objection to the entry of that order.

The Court agrees with PWCC. The permissibility of adding additional lots to the suit was decided by the Court's April 2, 1999, order. Furthermore, although the issue was not then contested, the Court concludes that the Order does not offend Code § 43-22. That statute provides that a party entitled to a mechanic's lien on property subject to an existing suit may file a petition to have its lien enforced in the same suit. In this case, PWCC performed site work under a single contract. PWCC's lien extended to all lots in the subdivision. PWCC apportioned its lien among the lots of Oakton Retreat, as it is required to do. Once one of the affected lots was subject to a suit to enforce a separate mechanic's lien, PWCC could petition for enforcement of the entirety of its claim in the same suit, so long as its petition was brought within six months of the filing of its memoranda of mechanic's lien.

For the foregoing reasons, the plea in bar of the owners of Lots 4, 5, and 6 will be overruled on this point.

2. *Timeliness of Suit to Enforce as to Lots 4, 5, 6, 8A, 10, and 15A*

The owners of Lots 4, 5, 6, 8A, 10, and 15A filed pleas in bar to PWCC's petition and cross-bill. They allege that, because Burton & Robinson's suit to

enforce is time barred, so too is PWCC's petition and cross-bill. According to these lot owners:

> The Petition/Cross-Claim filed herein by [PWCC] can rise no higher than the principal suit in which it was filed. If the principal suit its time barred, there is no suit validly pending before the court within which this Petition/Cross-Bill may be filed.

Plea in Bar to Petition/Cross-Bill, ¶ 2.

In that the Court has ruled that Burton & Robinson's suit to enforce is not time barred, these pleas in bar will be overruled.

## Conclusion

For the foregoing reasons, the pleas in bar and demurrers will be overruled.